## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

RIGHT OF WAY MAINTENANCE COMPANY §
D/B/A/ ROWMEC, §
§
    *Plaintiff,* §
§
v. §        CIVIL ACTION H-05-4081
§
GYRO-TRAC, INC. AND §
GYRO-TRAC (U.S.A.), INC., §
§
    *Defendants.* §

### ORDER

Pending before the court are Gyro-Trac's motion to exclude Stephen M. Horner, motion to exclude Karen O'Hagan's expert opinions, and motion to exclude Robert C. Curfiss. Dkts. 66, 67, & 68. After considering the arguments of the parties and the applicable law, the court is of the opinion the Gyro-Trac's motion to exclude Stephen M. Horner should be DENIED, the motion to exclude Karen O'Hagan's expert opinions should be GRANTED IN PART and DENIED IN PART, and the motion to exclude Robert C. Curfiss should be GRANTED.

### I. BACKGROUND

This case arises out of the alleged breach of a settlement agreement between the parties. The parties have identified the accounting regarding the dealership relationship, *inter alia*, as an issue for resolution by the trier of fact. To that end, Rowmec timely designated Stephen M. Horner and Karen O'Hagan to testify regarding different aspects of the accounting. Additionally, Rowmec intends to argue the interpretation of several clauses of the settlement agreement and their application to various technologies also at issue in the case. Therefore, they timely designated Robert C. Curfiss to testify regarding those issues. Although, the deadline for *Daubert* motions was December 1,

2006, Gyro-Trac recently sought and was granted permission to move the court for exclusion of these witnesses.

## II.  GOVERNING LAW

Any analysis of the admissibility of expert testimony must begin with Rule 702 of the Federal Rules of Evidence.  That Rule provides in full:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

This rule establishes the framework for determining the admissibility of expert testimony, as explained by the Supreme Court in the seminal case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).  Read together, *Daubert* and Rule 702 require the district courts "to act as gate-keepers, making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243-44 (5th Cir. 2002) (internal quotation marks omitted).  In other words, "expert testimony is admissible only if it is both relevant and reliable."  *Biomatrix*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 589).  And although *Daubert* only addressed scientific testimony, the Supreme Court later expanded the court's gatekeeping function to apply to all types of expert testimony.  *See Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999).

With regard to the issue of reliability, the *Daubert* Court offered four general factors that trial courts can use in evaluating expert testimony.  "These factors include whether the expert's theory

or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Id.* at 244 (citing *Daubert*, 509 U.S. at 593).  In *Kumho Tire*, the Supreme Court stressed that these factors, which were originally tailored for examining scientific opinions, were illustrative only, and they may not always translate to nonscientific disciplines.  "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150.  Thus, in a reliability determination for a nonscientific expert, the district court must satisfy itself that the expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152.

A.      **Stephen Horner, Ph.D.**

Rowmec designated Horner as "an economist . . . expected to testify and offer expert opinions on the following: lost profits of [Rowmec's] in the past; and lost profits of [Rowmec's] in the future." Dkt. 40.  Gyro-Trac does not argue that Horner is not qualified.  Instead, it argues that "Horner's opinions are unreliable for four reasons relating to his overall methodology." Dkt. 66.  Gyro-Trac's first reason is Horner's use of assumptions instead of historical data.  Second, Gyro-Trac objects that Horner did not take into account that Rowmec sold tractors at below the Manufacturer's Suggested Retail Price.  Third, Gyro-Trac argues that Horner should have used projections based on historical data rather than Rowmec's assertion that it would not generate associated incremental costs when he calculated additional revenue figures.  And, Gyro-Trac's last objection is that Horner ignored the out-of-territory commission component of tractor sales.  Gyro-

Trac's own economist believes that no scientifically reliable projection of lost profits is possible. Therefore, he concludes Horner's calculations are inherently unreliable.  Unsurprisingly, if he were to attempt to calculate it, his efforts result in a much lower sum than Horner's.

The court notes that all of these objections fall directly into the category of impeachment cross-examination.  Beyond presenting their equally credentialed expert's opinion that Horner's opinion is incorrect because it is theoretically impossible to calculate, Gyro-Trac offers no real argument about the methodology used by Horner.  Instead, Gyro-Trac disagrees with the underlying assumptions and figures that Horner plugged into his methodology.  Those types of arguments should be made on cross-examination of the witness in front of the trier of fact.  Accordingly, the court will not exclude Horner's testimony and Gyro-Trac's motion to exclude him is denied.

**B.      Karen O'Hagan's Expert Opinion**

Rowmec timely designated O'Hagan as a non-retained expert as follows:

> Mrs. O'Hagan is an employee of Plaintiff and expected to testify and offer expert opinions about the following: industry custom and practice regarding accounting and bookkeeping for service and warranty work for Plaintiff's customers who pruchased or used equipment manufactured or sold by Defendants; industry custom and practice regarding accounting and bookkeeping for the expected use, life cycle, and maintenance requirement of equipment manufactured or sold by Defendants; and whether Defendants had "good cause" to terminate their dealership agreement with Plaintiff.

Dkt. 40.  Gyro-Trac argues that O'Hagan is a bookkeeper, not an accountant, and should not be allowed to testify as an expert witness under Rule 702.  Furthermore, it argues that even should the court allow her testimony, the "O'Hagan Report" should not be allowed into evidence because it is hearsay.  *See* Dkt. 64, Ex. B.  According to Gyro-Trac, O'Hagan uses faulty methodology and erroneous data in her report.

Rowmec counters that it does not wish to call O'Hagan as an expert under Rule 702.  Rather,

it will present her testimony as lay opinion testimony under Rule 701.  Rule 701 reads in relevant part:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.  Moreover, they argue that the "O'Hagan Report" is nothing more than a summary of invoices and other admissible business records.  "Voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  FED. R. EVID. 1006.  The court agrees.  An examination of the "O'Hagan Report" reveals several summaries and calculations based upon voluminous invoices and warranty materials.  Whether O'Hagan made mistakes in creating her summaries is more properly the subject of cross-examination.  Accordingly, the court grants the motion to exclude Karen O'Hagan's expert testimony, but will allow her testimony as a fact witness under Rule 701. Furthermore, Gyro-Trac's motion to exclude the "O'Hagan Report" is denied based on Rule 1006.

## C.      Robert C. Curfiss

Rowmec timely designated Robert Curfiss as a retained expert, saying:

> Mr. Curfiss is an attorney and is expected to testify and offer expert opinions about the following: the language of the Agreement between the parties dated effective September 12, 2003, that certain sales of certain equipment are covered in the commission structure set forth in that agreement, and industry custom and practice regarding the licensing of intellectual property.

Dkt. 40.  Mr. Curfiss's curriculum vitae reflects that he has a bachelor's degree in engineering and has worked as an attorney in the field of intellectual property for many years.  Gyro-Trac objects to Curfiss's testimony that would attempt to construe the meaning of the settlement agreement because

such testimony would invade the province of the court. Additionally, Gyro-Trac objects to Curfiss's testimony regarding the similarity of the cutter head technologies used by Rowmec and Gyro-Trac. It argues that Curfiss is not qualified to give expert testimony about the actual technology used because he is not an engineer. Furthermore, it argues that even were the court to find that Curfiss was qualified, his testimony regarding the technologies would not aid the trier of fact. Curfiss relied mainly on the brochures of the different tractors when opining on the similarity of the technologies. Gyro-Trac argues that the jury is perfectly capable of putting the brochures side by side and comparing the two without expert help.

Rowmec responds that it does not intend to offer Curfiss's testimony regarding the proper legal interpretation of the contract. However, Rowmec argues that Curfiss should be allowed to testify regarding the scope of the word "technology" as used in technology agreements. This testimony would be based on the customs and usage with which Curfiss is especially conversant due to his "long history of negotiating transfers of technology." Dkt. 72. Moreover, Curfiss is not being offered as an engineering expert, so his qualifications as an engineer are not at issue. Rowmec strives to distinguish between Curfiss testifying as an attorney and Curfiss testifying as someone with 20 years experience writing technology agreements. The court is unconvinced. Curfiss cannot testify as to the custom and usage of the term "technology" in licensing agreements without becoming a "legal expert" on the witness stand. And, he cannot testify to engineering matters because he is unqualified to do so. Indeed, Rowmec has expressed its intent to produce John O'Hagan as an expert on the actual technology. Therefore, there is no way in which Curfiss is qualified to assist the trier of fact without usurping the role of the court. Therefore, the motion to exclude Curfiss is granted.

### III.  CONCLUSION

Pending before the court are Gyro-Trac's motions to exclude Stephen M. Horner, the expert testimony of Karen O'Hagan, and Robert Curfiss.  Dkts. 66, 67, & 68.  For the foregoing reasons, the court finds as follows:

Gyro-Trac's motion to exclude Stephen M. Horner is DENIED.  *See* Dkt. 66.

Gyro-Trac's motion to exclude Karen O'Hagan's expert testimony is GRANTED insofar as she will not be allowed to testify as an expert under Rule 702, but as a fact witness able to give lay opinion testimony under Rule 701.  And, it is DENIED with regard to the "O'Hagan Report."  *See* Dkt. 67.

Gyro-Trac's motion to exclude Robert C. Curfiss is GRANTED.  *See* Dkt. 68.

It is so ORDERED.

Signed at Houston, Texas on May 11, 2007.

_____
Gray H. Miller
United States District Judge